[S. F. No. 2533. In Bank.—September 3, 1903.]

## THURLOW McMULLIN, Respondent, v. VIRGINIA Mc-MULLIN, Appellant.

DIVORCE—DESERTION—REVOCATION OF CONSENT.—The consent of a husband and wife to a separation is a revocable act; and if one of the parties thereafter in good faith seeks a reconciliation and restoration, which the other refuses, such refusal is desertion, which, if continued for a year, constitutes ground for divorce.

ID.—SUFFICIENCY OF EVIDENCE.—The sufficiency of the evidence to sustain the findings of fact as to such continued desertion of the plaintiff by the defendant will not be reviewed upon appeal, where it appears that there is evidence fairly tending to support the findings, though this court might have reached a different conclusion. [Van Dyke, J., dissenting as to question of sufficiency.]

ID.—PROVINCE OF TRIAL COURT—ADMISSIONS AND CONDUCT OF PARTIES. —It is for the court trying the case to determine from all the facts and circumstances appearing therein whether or not there was consent or the absence of consent to the separation; and the acts, statements, and admissions of the parties are competent and material evidence in determining that question.

ID.—CONSENT HOW SHOWN.—The consent of the parties to the separation need not be expressed in words, but it may be implied from the acts of the parties, and may be tacit as when the parties are willing and make no objection.

ID.—CHARACTER OF SEPARATION—CHANGE OF STATUS.—The character of the separation is not forever established by the *status* at the time when the parties ceased to live together; but what was originally a separation without consent may become a separation by consent; and that *status* may again be changed by the refusal to accept a reconciliation proffered in good faith.

ID.—ORIGINAL OFFENSE—BAR OF STATUTE—DEFENSE TO DIVORCE.—The original offense is not condoned by mere subsequent acquiescence of both parties in a separation, but it must be prosecuted with reasonable diligence, and if so prosecuted may be made a defense to an action for divorce by the one who has proffered a reconciliation and been refused. But if the cause of action for the original offense is not then subsisting, and is barred by the statute, it cannot be made a defense to such action.

ID.—CORROBORATION OF DESERTION—EVIDENCE.—The attitude of the defendant in refusing a reconciliation, or to cohabit with the plaintiff under any circumstances, and the declarations of the defendant to third parties at the time of and subsequent to the offer of reconciliation, are a sufficient corroboration of the plaintiff's evidence.

Id.—Harmless Error—Cross-Examination of Plaintiff.—Conceding
that there was technical error in disallowing a question on cross-
examination of the plaintiff, as to his reason for expecting the de-
fendant after eighteen years of separation to go and live with him
again,—where it appears from all the circumstances in the record
that it could not have affected the substantial rights of the parties,
—it is not ground for reversal. [Van Dyke, J., and Beatty, C. J.,
dissenting.]

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial. George H. Bahrs, Judge.

The main facts are stated in the opinion of the court. Fur-
ther facts are stated in the dissenting opinion of Van Dyke, J.

Denson & Schlesinger, and S. C. Denson, for Appellant.

The law will permit a divorce only at suit of an inno-
cent party, and will never favor a guilty one. Recrimination
and a cross-complaint for a divorce are not convertible terms.
(Civ. Code, secs. 111, 122; *Hall* v. *Hall,* 4 Allen, 35; *Clapp*
v. *Clapp,* 97 Mass. 531; *Wilson* v. *Wilson,* 40 Iowa, 230;
*Pierce* v. *Pierce,* 3 Pick. 299;[1] *Dupont* v. *Dupont,* 10 Iowa,
112;[2] *Jenkins* v. *Jenkins,* 104 Ill. 134; *Prather* v. *Prather,*
26 Kan. 273; 9 Am. & Eng. Ency. of Law, p. 773 (new
edition); Bishop on Marriage and Divorce, sec. 786; *Mc-
Vickar* v. *McVickar,* 46 N. J. Eq. 490.[3])

Charles S. Wheeler, Guy C. Earl, and J. F. Bowie, for Re-
spondent.

A recriminatory defense must be a cause of action for a
divorce. Such a cause of action cannot subsist after an un-
reasonable lapse of time. (Civ. Code, secs. 122, 125; *Smith* v.
*Smith,* 119 Cal. 189.) The finding as to consent to the sepa-
ration was sustained by the circumstances proved. (1 Nelson
on Divorce and Separation, secs. 67, 91, pp. 106, 107, 143;
*Hankinson* v. *Hankinson,* 33 N. J. Eq., 71; *Porritt* v. *Porritt,*
18 Mich. 424; *Rose* v. *Rose,* 50 Mich. 92; Civ. Code, sec. 125;
*Thomson* v. *Thomson,* 121 Cal. 12.) A desertion is shown by
refusal of the proffered reconciliation. (Civ. Code, secs. 96,

[1] 15 Am. Dec. 210, and note.  [3] 19 Am. St. Rep. 422.
[2] 74 Am. Dec. 378.

101; *Sargent* v. *Sargent,* 106 Cal. 544; *McMullin* v. *McMullin,* 123 Cal. 653, 655.) The object of corroboration is to prevent collusion, and a sufficient corroboration of plaintiff's evidence was shown. (*Andrews* v. *Andrews,* 120 Cal. 184; *Smith* v. *Smith,* 119 Cal. 191; *Evans* v. *Evans,* 41 Cal. 108; *Baker* v. *Baker,* 13 Cal. 87; *Venzke* v. *Venzke,* 94 Cal. 225; *Cooper* v. *Cooper,* 88 Cal. 45; *Wolff* v. *Wolff,* 102 Cal. 433.)

ANGELLOTTI, J.—This is an action for divorce on the ground of desertion. Plaintiff had judgment, and defendant appeals from the judgment and an order denying her motion for a new trial.

The parties intermarried in the year 1871, but have not lived together as husband and wife since the year 1877. Plaintiff, in his complaint filed April 9, 1898, alleged a desertion by defendant on April 10, 1896, the theory of his case, as shown by the evidence, being that the separation of the parties from 1877 to some time in April, 1895, was by consent, and that in April, 1895, he, in good faith, sought a reconciliation and restoration, and defendant refused, and has ever since continued to refuse, the same, thus rendering herself guilty of desertion. The defendant, in her answer, denied that she had ever deserted plaintiff, and alleged that in the year 1877 the plaintiff voluntarily separated himself from defendant, with the intent then and there to desert her, and has ever since continued such desertion. She also alleged failure to provide and adultery on plaintiff's part, but there was no evidence to sustain these allegations.

The findings of the court were entirely in accord with plaintiff's contention, and against defendant's allegation that plaintiff had deserted her. The court, after finding that the defendant deserted plaintiff on April 10, 1895, and has ever since continued such desertion, and that the separation in 1877 was not against the wish or will of said defendant, but was fully acquiesced in and consented to by the said defendant, further found as follows:—

"V. . . . The separation of plaintiff from defendant in the year 1877, was, and thereafter until the tenth day of April, 1895, continued to be, with the full acquiescence and consent of defendant. . . .

"VII. That, on the 10th day of April, 1895, while the plaintiff and defendant were living separate and apart by mutual acquiescence, the plaintiff offered, in good faith, to return to and live with the defendant, and sought a reconciliation and restoration; that the defendant then and there refused it, and ever since has refused to accept the said offer."

It cannot be doubted that if these findings are sustained by evidence the defendant's refusal constituted a desertion on her part, for our statute expressly provides that separation by consent is not desertion, and that consent to a separation is a revocable act, and if one of the parties afterwards, in good faith, seeks a reconciliation and restoration, but the other refuses, such refusal is desertion. (Civ. Code, secs. 99, 101.)

The contention of the appellant is, that the findings of the court in this regard are not sustained by the evidence. It may be conceded for the purposes of this appeal that the evidence was such that it would have supported contrary findings, or even that the judges of this court upon a review of the evidence contained in the record might come to a different conclusion as to the facts from that reached by the trial court.

But it is a well-established rule that the trial court is the exclusive judge of questions of credibility of witnesses and weight of evidence, and that the determination of the trial court upon questions of fact is conclusive upon this court where there is any evidence fairly tending to support that determination. Looking at the evidence, it cannot be said that there is not evidence sufficient to support these findings. The character of the separation—i. e. as to whether or not it was by consent—is not to be determined solely by what occurred at the moment that the parties separated. There is nothing in our law that requires any written agreement of separation, or that requires the consent to be expressed in words. As stated in Nelson on Divorce and Separation (sec. 67): "It may be implied from the failure of the parties to make overtures after a quarrel; from acquiescence in the separation; . . . or from other circumstances which show the plaintiff's consent or that the separation was not against her will. The consent need not be express. It may be tacit, as where the plaintiff is willing and has made no objection." It is for the court trying the case to determine from all the facts and cir-

cumstances appearing in the case whether or not there was an absence of that consent to living separate and apart which is essential to constitute a desertion, and the acts, statements, and admissions of the parties subsequent to the cessation of cohabitation are clearly competent and material evidence in the determination of that question. In this case it appears that the parties had lived most unhappily together, and that finally plaintiff left the family home. In the light of subsequent events, it cannot be said that there was no foundation for the conclusion of the trial judge that this departure was not against defendant's will. The circumstances attending plaintiff's departure were not such as to make it impossible for defendant to make any overtures for a reconciliation, if she was opposed to the separation. Defendant made no effort to dissuade him from going. For nearly eighteen years the parties continued to live in the same city, separate and apart from each other, without the slightest attempt on the part of either to see or communicate with the other. Defendant never sought to obtain the divorce to which she was entitled, if the separation was without her consent. So long as he was permitted by defendant to see his child, he never refused to pay any bills that were contracted by her. Finally, when she brought her action against him for maintenance, in response to his offer to return and his request for a reconciliation and restoration, she refused the offer, and declared, not only to her attorneys, but also under oath on the trial of the maintenance suit, that she was unwilling to live with plaintiff under any surroundings or circumstances or conditions. It is clear from the record that the declared position of defendant for certainly three years preceding the commencement of this action has been that she insisted upon living separate and apart from her husband, and would consent to nothing else. Whatever might be the conclusion of a court as to which of these parties was at fault in the matter that led up to the separation, we are of the opinion that it cannot be said that the findings of the court as to the situation at the time of plaintiff's departure from the family home does not find support sufficient to sustain it in the evidence.

But were we in doubt as to this, there can be no question as

to the sufficiency of the evidence to sustain the finding that on April 10, 1895, the parties were living separate and apart by mutual acquiescence and consent. The evidence demonstrates that at that time there was not only acquiescence and consent in the separation on the part of defendant, but a fixed determination on her part that such separation should continue to the end of the lives of the parties, and it is very clear therefrom that for some time prior to that date the separation had lacked that want of consent on the part of the defendant essential to constitute desertion.

The character of the separation of a man and wife is not forever established by the *status* at the time they cease to live together. What was originally a separation without consent may become a separation by consent, and whether or not it has become such is a question of fact, depending for its solution upon all the circumstances of the particular case. Desertion is a continuing offense, but it continues only so long as there is a want of consent to the separation on the part of the deserted party. Of course, the original offense is not destroyed by the fact that after the desertion has continued for the period essential to make it a ground of divorce, the *status* of the separation changes and the separation becomes in every way agreeable to the deserted party. She has still her right of action for a divorce because thereof, and is not obliged to condone the offense. (*Benkert* v. *Benkert,* 32 Cal. 467.) But she is compelled to assert that right within a reasonable time (Civ. Code, sec. 124, subd. 3), and the continuance of the separation after such change in the *status is not a continuance of the desertion.* The parties are by the change placed in the position of living separate and apart by consent, and under the provisions of our statute (Civ. Code, sec. 101) either party may revoke his consent and in good faith seek a reconciliation and restoration, and the refusal of the other to conform thereto constitutes desertion on his or her part, which, if continued for one year, becomes a ground of divorce. Of course, a complete answer to the complaint for divorce in such a case would be the showing by the other party of any cause of divorce against the plaintiff, but it must be a subsisting ground of divorce, one upon which she was then entitled to a divorce, and not one barred by statute. Our

statute, after providing that a divorce must be denied when the action is not brought within a specified time in cases of adultery and conviction of felony, provides that it must be denied in all other cases, where there is an unreasonable lapse of time before the commencement of the action (Civ. Code, sec. 124), and further provides that "Unreasonable lapse of time is such a delay in commencing the action as establishes the presumption that there has been connivance, collusion, or condonation of the offense, *or full acquiescence in the same, with intent to continue the marriage relation,* notwithstanding the commission of such offense." (Civ. Code, sec. 125.) There cannot be the slightest doubt under the circumstances appearing here that if it be admitted that defendant originally had a good cause of action for desertion it is barred by the provisions of these sections.

The law of this state does not contemplate the enforcement of any such condition of the parties to the marriage as that contended for by defendant, a continuance of the marriage relation with the parties living separate and apart against the will of one of them. It does not place it within the power of one of the parties to insist that he or she shall be free from the obligations of marriage, and that at the same time the other party shall be compelled to remain his or her husband or wife, simply because the other party had been guilty of some offense constituting a ground of divorce, at a time so far distant that a divorce could not now be granted therefor.

It was held, as between these parties, in *McMullin* v. *McMullin,* 123 Cal. 653, that the wife could not, under the circumstances of this case already detailed, enforce the duty of support against the husband, and it was said in that case that: "The cases touching this subject quite uniformly hold or imply that although the husband may have deserted the wife, yet the door for repentance is open for him, and is not necessarily closed by the fact of suit brought for maintenance; so, not because of any tenderness of the law for delinquent husbands, but because of *its aversion to separation of the spouses.*" The question of good faith of plaintiff in seeking reconciliation and restoration was, as said in the case last cited, one of fact, and it was there held, upon evidence not materially different from that adduced on the trial of this

case, that the finding of the court to the effect that plaintiff's offer was made in good faith, could not be disturbed on appeal.

There is nothing in the objection that the evidence of the parties is not sufficiently corroborated. The main purpose of section 130 of the Civil Code is to prevent collusion, and here, as in *Smith* v. *Smith*, 119 Cal. 191, it is clear that there was no collusion. The attitude and declarations of the defendant to various parties at the time of and subsequent to the offer of April 10, 1895, are in themselves a sufficient corroboration.

The only remaining point made by appellant is, that the court erred in sustaining an objection to the following question asked plaintiff on cross-examination: "What reason did you have for expecting, after these eighteen years of separation under all these conditions, that she would accede to this letter and go and live with you again?" If it be conceded that there was technical error in this action of the court, we are satisfied that it was not, under all the circumstances appearing in the record, of such a nature as to necessitate a reversal. It could not have affected the substantial rights of the parties.

The judgment and order are affirmed.

Shaw, J., Henshaw, J., and McFarland, J., concurred.

VAN DYKE, J., dissenting.—I dissent. In commenting upon the two findings upon which the judgment of the court below must rest for support, it is said in the majority opinion: "It may be conceded for the purpose of this appeal that the evidence was such that it would have supported contrary findings, or even that the judges of this court, upon a review of the evidence contained in the record, might come to a different conclusion as to the facts from that reached by the trial court. . . . Looking at the evidence, it cannot be said that there is not evidence sufficient to support these findings." Herein I am obliged to differ with the majority of the court. So far from there being sufficient evidence to support the findings, there seems, from the transcript, to be an entire lack of testimony to support the material and essential facts contained in them. The first of these findings is as follows: "That, in the year 1877, plaintiff voluntarily separated himself from the defendant, and thereafter, until on or about the tenth day of

April, 1897, continued to live separate and apart from the defendant, but that the said separation was not against the wish or will of said defendant, but was wholly acquiesced in and consented to by the said defendant. That plaintiff did not in the year 1877 willfully desert and abandon the defendant, nor was plaintiff's separation from the said defendant with the intent then and there to desert the defendant, nor has the plaintiff ever since, or at any time, continued to or kept up or continued the said or any separation or abandonment; but that, on the contrary, the separation of plaintiff from defendant in the year 1877 was, and thereafter until the tenth day of April, 1895, continued to be with the full acquiescence and consent of defendant.'' The material and essential questions involved in this finding are whether the husband in 1877 voluntarily separated himself from the defendant, she acquiescing in the same, or whether he deserted her against her wish and will. The only direct testimony bearing upon these questions is that given by the parties themselves. In the testimony of the wife she says: ''In the morning when we were down to breakfast and sat there and he started to go, he went back first into the kitchen and discharged the cook in my presence and I told the cook not to pay any attention, that he must remain. He told the nurse to pack his trunk, that he would send for it that day, and then he left and during the day he sent for the trunk by an expressman, and when I saw that he was there I interrogated him to find out where he was going to take the trunk, and the expressman did not tell. That was the last time that he was ever in the house. The trunk was ready to go. The nurse had packed it. It was not closed, and just before it was closed I put in a little shoe, one of the pair of shoes, a little kid shoe, the first my baby had ever worn, and laid it on the tray of the trunk after the things were all packed; that was one of my baby's shoes, and I had a pair of cuff-buttons that I had given him Christmas before we were married and rather too handsome for him to wear daily and liable to be broken, and he asked me to put them aside, and take care of them for him. I put those on top of the tray of the trunk and I wrote a few words on a piece of paper and put them on top of the cuff-buttons. I have not seen the piece of paper since. I

remember about what the words were. I said 'I married you
for love, I have lived with you for love and I would have
clung to you forever for love. You have broken my heart.
You have wrecked my life. May those who have done this
thing meet with just punishment. God help us all and keep
you from harm. Your wife.' I directed it 'My husband.'
I laid it on top of the buttons that he must see it. It was
impossible for it to get lost. I know he must have seen it.
I put it in the tray of the trunk beside the little shoe. The
trunk was locked by the nurse and the expressman took it
away. I have never at any time had any agreement or cor-
respondence or talk with Mr. McMullin or any one in his
behalf, since then, to live separate." Plaintiff's attorney
here admitted that Mrs. McMullin was a woman of education
and refinement. She further testified: "I lived with my
father up to the time of his death, about fifteen years ago,
and since then with my mother, and they have supported me
and my child, barring the time that I was working for my
living. I worked in the mint for over eight years, and de-
voted my salary to the support of my boy and myself." That
portion of the testimony of the husband in relation to the
separation is as follows: "Q. [By his counsel.] Did you
say to your wife on the 14th of November, 1877, 'I am going
to desert you; my relatives are unwilling I should live with
you; I wish you would pack my trunk?'—A. I do not remem-
ber anything about the relative part. I remember asking
to have—I do remember asking her to pack my trunk.—Q.
Did you on the morning of November 15, 1877, before leaving
the house, discharge, or attempt to discharge, the Chinese
servant?—A. I do not remember anything about the occasion
of discharging either the servant or nurse. I have no recol-
lection of any such occurrence. I don't remember speaking
to the servant about it. I sent for my trunk by an express-
man and got it. I have no recollection of seeing that little
shoe in the trunk, and I am sure I would remember it if I
had seen it, and I think I would have it now." On cross-
examination he said: "I don't remember that shoe. I think
if I had received it I would have it yet, but I can't recall it.
I remember the pair of cameo cuff-buttons. She gave them to
me for a birthday or Christmas present before marriage. I

guess they came in the trunk, but I can't remember about that. At any rate, I think they are somewhere among my effects now, but I have not seen them for years. She put them in my trunk and I took them out. I don't remember whether they were in the case when they came in the trunk. . . . I don't remember about any note being put in the mirror or otherwise. I don't remember whether I sent any communication to her in any manner. After one, two, or three days I went back for the purpose of getting my things, or having them packed to leave. There might have been a request made for these things to be packed while I was away, but I don't know. When I went back for my things she begged me to stay.'' Here we have the statements of the parties concerned in reference to the manner in which the separation took place. There is nothing in the transcript to the contrary, or showing a different state of facts. It is a fair presumption that the wife's statement of the matter is correct, for the reason that the portions he does not admit he simply says he does not remember, without denying the same. For instance, in her statement she says: ''I wrote a few words on a piece of paper and put them on top of the cuff-buttons.'' He admits having received the cuff-buttons, but ''don't remember about any note being put in the mirror or otherwise.'' Her note shows the opposite of any separation on his part with her consent. On the other hand, she says that ''You have broken my heart; you have wrecked my life,'' etc. He admits in his testimony that ''When I went back for my things she begged me to stay,'' and he does not deny that he told her: ''I am going to desert you, my relatives are unwilling I should live with you,'' but only says, ''I don't remember anything about the relative part.''

The other finding in question is as follows: ''That on the tenth day of April, 1895, while the plaintiff and defendant were living separate and apart by mutual acquiescence, the plaintiff offered, in good faith, to return to and live with the defendant and sought a reconciliation and restoration; that the defendant then and there refused it, and ever since has refused to accept said offer.'' The vital point in this finding is, that the husband offered in good faith to return to and live with his wife. The offer in question, it will be

seen, was made some eighteen years after the separation, and was not made until every effort had been exhausted on the part of the husband to induce the wife herself to bring a suit for divorce. Instead of having been made in good faith, for the purpose of reconciliation, and with the expectation that the two would live together, it was made for the purpose on his part of laying the foundation for this action. At the time the offer in question was made, an action for maintenance against the husband had been instituted by the wife and was then pending. The late Judge Paterson was the attorney of Mrs. McMullin in that proceeding, and the husband's attorney was Mr. Wheeler, who is also his attorney in the present action. Judge Paterson was called as a witness on the trial of this case and says: "During the pendency of that case [the suit for maintenance] I had a good many talks with Mr. Wheeler and Mrs. McMullin. . . . I know that McMullin was exceedingly anxious to have the matter disposed of and that there should be a divorce. Mr. Wheeler told me that Mr. McMullin would be willing to give her a liberal half of all the property he had, and would acquaint us fully with those properties, where they were and what they were worth. Mrs. McMullin, basing her objections on religious grounds, declined to listen to any proposition which would result in a divorce. She claimed to have religious scruples against such a thing as divorce, and said she never could have a happy day if she were a divorced woman. Necessarily, and taking these views, and being very positive about them, the matter of divorce was dropped, so far as she was concerned, in the negotiations." On cross-examination he says: "I intended to say that Mr. McMullin's desire, communicated to me, was that there should be a divorce from his wife, to which she would not assent. Subsequently I stated that I learned from either Mr. McMullin or Mr. Wheeler—I don't know which or where—that unless that were done Mr. McMullin would lay the foundation of a divorce himself by an offer of a home." This testimony is not in any manner impeached, and it shows that the husband sought to have the wife bring a suit for divorce. He, of course, knew that she could not bring the suit unless he himself had been guilty of desertion and that she was the injured party. Still the court finds that he did

not desert—that the separation was agreeable to the wife and by consent. It further shows that the offer in question was not made in good faith for the purpose of reconciliation and restoration of the relation of husband and wife, as the code requires, but was made to lay the foundation for a divorce.

The so-called offer, as an effort at reconciliation between husband and wife, is, to say the least, rather unusual. He does not visit her to talk the matter over, as might be supposed in such a case, but sends her a formal note to call on him at a certain hotel, where he will await her coming for half an hour. After referring to the negotiations testified to by Judge Paterson, in which it already appears she refused to bring an action against him, the note in question concludes by saying: "I therefore ask that you return and fulfill the marriage contract, and I offer to do and will do likewise. I will wait for you to-night at the parlors of the Occidental Hotel from 7 P. M. until 7:30 P. M." On cross-examination he was asked: "When you sent this letter to Mrs. McMullin did you expect that she would accede to it?—A. I did n't know.—Q. I asked you if you expected?—A. I think I answered I did n't know.—Q. Of course you did n't know whether she would accept or not—did you expect she would? —A. I did n't know at that time.—Q. You did n't know whether you expected it?—A. I did n't know whether she would accept it or not.—Q. Then I understand you did n't know whether she would accept that or not. Did you expect she would accept it?—A. How could I tell that?" The court then interposes: "Did you have any expectation about it one way or another?—A. Yes, naturally so, judge; I would rather expect she would accept it.—Q. [By defendant's counsel.] What reason did you have for expecting, after these eighteen years of separation, under all these conditions, that she would accede to this letter and go and live with you again?" An objection was made to this question, which was sustained by the court, and the witness was thereby saved from being compelled to answer it. From the tone of his letter to her, as well as from the other circumstances shown by the evidence, his offer was not made in the expectation that it would be accepted, nor for the purpose of reconciliation, but, on the contrary, was made for the sole purpose of laying the founda-

tion for this action, and in accordance with what was stated to Judge Paterson he would do, in case the wife refused to bring the action herself; and the purpose of the question on cross-examination was to ascertain whether that were not the fact, and to show that he had no reason or ground for supposing that under the circumstances a reconciliation would take place. The crucial point in this particular was whether his offer was made in good faith, and the defendant's counsel had a right on cross-examination to test the conscience of the plaintiff—the husband—upon the question of his motive or good faith in making the offer. Cross-examination is one of the most valuable means of eliciting truth, and when properly conducted should be upheld by the courts and not suppressed.

The judgment and order should be reversed.

BEATTY, C. J., dissenting.—I dissent. It must be conceded, as held in the prevailing opinion, that the evidence in the record is legally sufficient to sustain the finding of the superior court that the long separation of these parties was by mutual consent, or at least by acquiescence. Neither of the spouses, therefore, could have maintained an action for divorce on the ground of desertion without first revoking his or her consent to the separation by seeking in good faith a reconciliation and restoration of conjugal rights and duties, a refusal of which would constitute desertion by the party so refusing. (Civ. Code, sec. 101.)

The plaintiff bases his right of action upon an alleged revocation of his consent to the previous separation made in pursuance of this section of the code, and the trial court has found that he complied with its requirements in good faith. That he made a formal offer to resume conjugal relations is conceded, but the good faith of his offer is open to serious question, and although there may be evidence in the record sufficient to sustain the finding upon this point, it seems to me that any error of the trial judge in excluding evidence tending to invalidate his conclusion that the offer was made in good faith is vital. I think that such error was committed in sustaining the objection to the question asked the plaintiff in cross-examination. An offer in good faith under this provision of the code is an offer made for the purpose and with the genuine desire of resuming the conjugal relation,

and not an offer made in the confident belief that it will be rejected, and for the mere purpose of evading a pecuniary obligation, or of laying the foundation for an action for divorce. The question addressed to the plaintiff was in the line of cross-examination adapted to develop his real motives and expectations, and it should have been allowed. I think the order denying a new trial should be reversed.

Rehearing denied.