[Civ. No. 8533. First Appellate District, Division One.—July 9, 1932.]

WINFRED T. WILSON, Respondent, v. FLORENCE E. H. WILSON, Appellant.

Harry I. Stafford, Edward A. Cunha and Allen C. Cunha for Appellant.

Andros, Hengstler & Dorr for Respondent.

THE COURT.—An appeal from an interlocutory decree of divorce.

Plaintiff charged defendant with adultery committed with two persons named in his complaint, and also with extreme cruelty. Defendant denied the charges, and as a separate defense alleged condonation, and also by way of cross-complaint charged the plaintiff with extreme cruelty toward her. There was also in issue the validity of an agreement settling their property rights.

The trial court found the complaint to be true and the allegations of the answer and cross-complaint to be untrue. It also found the said agreement to be valid and binding. An interlocutory decree of divorce was awarded the plaintiff, and he was also given the custody of the two minor children of the marriage.

Defendant contends that certain of the findings are unsupported, namely, the findings that she committed adultery and was guilty of extreme cruelty, and that the court erred in awarding the custody of the children to the plaintiff.

As to the first charge, plaintiff testified that while he was residing in Oakland his wife and children were temporarily occupying a house at Saratoga, where he visited her weekly. On the occasion alleged he arrived at Saratoga at night and found his wife's and another automobile parked in the driveway to his house. The house doors were locked, but he forced his way in and found his wife with a certain man named Fry, both being partially dressed. Fry attempted to hide under a bed. Plaintiff then charged his wife with adultery, which she admitted, and Fry stated, "Well, I guess I went too far with your wife." A brother of plaintiff testified that defendant admitted the above facts to him, stating, however, that she had not committed adultery on that occasion, but that such had been her intention but for the arrival of her husband. At the trial defendant admitted that Fry was with her on the occasion testified to by plaintiff and that he kissed her, but she denied any acts of adultery. Fry also testified that he was present on that occasion and that he kissed the defendant, but denied any other improper acts. Defendant contends that there was insufficient corroboration of plaintiff's testimony to justify a finding that she committed adultery with Fry.

No divorce can be granted upon the uncorroborated statement, admission or testimony of the parties (Civ. Code, sec. 130); and in an action for divorce on the ground of adultery a confession of adultery, whether in or out of the pleadings, is not of itself sufficient to justify a judgment of divorce (Code Civ. Proc., sec. 2079). It has been held, however, that the principal object of the rule requiring corroboration is to prevent collusion; and where it is clear that there is no collusion, and the defendant's testimony, though conflicting with that of plaintiff in many of its details, in the more important matters was corroborative of the plaintiff's testimony, which was also corroborated in certain respects by other testimony, the corroboration is sufficient (*Smith* v. *Smith*, 119 Cal. 183 [48 Pac. 730, 51 Pac. 183]; *Andrews* v. *Andrews*, 120 Cal. 184 [52 Pac. 298]; *McMullin* v. *McMullin*, 140 Cal. 112, 119 [73 Pac. 808]).

And it has been held that the fact that a defendant has vigorously contested the suit dispels any idea of collusion between the parties in the procurement of the divorce (*Hill* v. *Hill*, 106 Cal. App. 309 [289 Pac. 227]).

█ Adultery may be proved by circumstantial evidence as well as by direct evidence (*Aston* v. *Aston*, 14 Cal. App. 323 [111 Pac. 1035]); and in divorce actions corroboration of every act sworn to by plaintiff is not required, but evidence, circumstantial or direct, tending to confirm plaintiff's testimony upon a considerable number of material facts is sufficient (*Percy* v. *Percy*, 188 Cal. 765 [207 Pac. 369]). In *Koenigstein* v. *Koenigstein*, 53 Cal. App. 673 [200 Pac. 730], it was held that in proving adultery by indirect evidence a criminal disposition or desire in both the mind of the defendant and the *particeps criminis*, and an opportunity to commit the crime, must be shown; and proof of an adulterous disposition on the part of the defendant and an alleged paramour, coupled with an opportunity for them to commit the offense, has generally been held sufficient (19 Cor. Jur., Divorce, sec. 357, p. 139). █ Here we have testimony of admissions by defendant both of the act charged and the disposition to commit such act. Such testimony, while not sufficient alone, was admissible (9 Cal. Jur., Divorce and Separation, p. 643), and is corroborated by that of Fry that, with the exception of defendant's children, who were on an upper floor, he was alone in the house with defendant on the night alleged and, without apparent objection on her part, indulged in familiarities. These facts tended to show an adulterous inclination in both, and his testimony was properly considered in determining the fact of adultery, its weight being a question for the trial court (19 Cor. Jur., Divorce, sec. 364, p. 141; 9 Cal. Jur., Divorce and Separation, sec. 128, p. 780; *Brenot* v. *Brenot*, 102 Cal. 294 [36 Pac. 672]).

█ The second charge of adultery involved defendant's conduct with one Prest. It was testified by the owner of an apartment house in Los Angeles that defendant occupied one of the apartments in company with Prest for about a month, and this was corroborated by a real estate agent who rented the premises to the couple and who testified that defendant was introduced to him as Prest's wife. Another witness testified that defendant and Prest lived in an apartment adjoining the one occupied by him. In addition detectives testified to an occasion when defendant entered Prest's room in a house in Oakland. The detectives were in an adjoining room. They entered shortly afterward and found

the two together. Defendant was lying upon a bed with her clothing disarranged. The deposition of Prest was also taken. He testified that in company with defendant he visited Los Angeles and lived there with her for some time. He admitted having sexual relations with her there and elsewhere. The taking of his deposition having been continued for a few days, upon its resumption he denied the truth of his previous statements. Defendant admitted at the trial that she was in Los Angeles at the time testified to, and that she lived at the apartment house mentioned; also that she was there introduced as Mrs. Prest. She denied, however, any misconduct with Prest. There were also introduced in evidence letters written by defendant to Prest containing words of endearment and suggestion. Defendant contends that the evidence of Prest and the detectives was entitled to but slight weight, and that the testimony as a whole was insufficient to support a finding of adultery.

The credibility of the witnesses and the weight to be given their testimony were questions for the trial court, and the evidence, which the court believed, was ample to sustain the charge. ▪ The evidence supporting the charges of adultery also sustained plaintiff's allegations of extreme cruelty.

▪ The court found that defendant's allegations of cruelty on the part of her husband were untrue. The cruelty alleged consisted of physical violence and the application of vile epithets. This was testified to by defendant, and she was corroborated by another witness. The plaintiff denied the alleged physical violence, but admitted that on the occasion when Fry was found in his home, he applied to his wife epithets which would be calculated under ordinary circumstances to cause his wife extreme mental suffering; but the court no doubt believed the circumstances were such as to excuse his conduct; and in addition it was testified that on the following day defendant stated that she had no fault to find with her husband. The facts were sufficient to show an absence of mental suffering on this account.

▪ A few days after the incident at Saratoga the parties entered into an agreement settling their property rights. There was no community property of the marriage, and the agreement required plaintiff to pay defendant $100 a month for two years.

This promise was accepted in full satisfaction of all claims against him. The court found that the agreement was made voluntarily and without fraud, duress, menace or undue influence, and the record discloses nothing which would necessitate a contrary conclusion. These findings are also supported by the evidence.

■■■ The court awarded the custody and care of the two minor children to plaintiff for a period of six months, further provision being made that defendant might visit them at all reasonable times and have them with her for one day each week; also that if defendant should visit Sacramento during any week she might have them with her for two days. The children are a girl and a boy aged six and four years respectively. While presumptively a mother is entitled to the custody of children of tender years (*Luck* v. *Luck*, 92 Cal. 653 [28 Pac. 787]), nevertheless the controlling consideration is the children's welfare, and this question is one for the trial court, whose conclusion will not be set aside in the absence of a clear abuse of discretion (*Bancroft* v. *Bancroft*, 178 Cal. 352 [173 Pac. 582]; *Cammack* v. *Cammack*, 205 Cal. 674 [272 Pac. 288]). Here, in view of the facts, the award was not only for the best interests of the children, but fair to the spouses, and we see no reason for disturbing it.

The conclusions of the trial court are fairly sustained by the evidence, and no error has been shown which would warrant the reversal of the judgment.

The judgment is affirmed.