[Civ. No. 12538. First Dist., Div. One. Oct. 18, 1943.]

GEORGE R. UNGEMACH, Respondent, v. BARBARA UNGEMACH, Appellant.

Barbara Ungemach in pro. per., Roy J. Farr and Ben L. Blue for Appellant.

Louis T. Milburn for Respondent.

PETERS, P. J.—George Ungemach brought this action for divorce against his wife Barbara Ungemach on the ground of extreme cruelty. From a judgment awarding an interlocutory decree of divorce to the plaintiff the defendant appeals.

The parties first met in the summer of 1939 at Yosemite Valley, where plaintiff was an officer in a C.C.C. Camp. They were married in October, 1939. They lived together for brief

periods, but in April of 1940, less than six months after the marriage, separated. This action was filed September 16, 1940. There are no children of the marriage and no property questions are involved. Plaintiff is now an officer in the United States Army, stationed outside California.

The complaint charged cruelty in general terms as permitted by section 426b of the Code of Civil Procedure. The answer denied the allegations of cruelty, but, by failing to deny, admitted the allegations of residence. The trial court found that all of the allegations of the complaint were true, and specifically found that during the marriage "defendant has on numerous occasion[s] in the presence and hearing of other persons, spoken to and of defendant [plaintiff] in an unreasonable, derogatory and insulting manner, which was calculated to cause, and did cause, plaintiff embarrassment, humiliation, and mental pain and suffering."

The first part of the trial was had in July, 1941. At the conclusion of the first day of trial the court granted a long continuance. This was apparently done because, although plaintiff testified he no longer loved defendant, the latter testified she still loved plaintiff, and wanted a chance to see if the marriage could not be salvaged. The trial was resumed in June of 1942. It then appeared that no reconciliation had been effected. At the conclusion of this portion of the trial the court granted the judgment appealed from.

■ The appellant urges that there was no legally sufficient evidence to support the finding of cruelty. The evidence shows that on one occasion appellant stated to the witness Dr. Strickland, in the presence of the plaintiff, that "she was unhappy with her husband and that he did not understand her. That she was unhappy with her husband, that that was the cause of her nervousness . . . that Lieut. Ungemach did not understand her . . . that he was not a gentleman, that he was not refined in his home . . . that he was untrained in home refinements and was not a gentleman." The witness further testified that defendant was irrational in her conduct; that the two parties quarreled a great deal in his presence; that on one occasion the appellant told the witness in the presence of plaintiff that "she had been raised in the east and in Europe and that gentlemen in Europe behave differently"; that on another occasion, in the presence of respondent's father and the witness, appellant told respondent's father that "he had not raised his boy to be a good husband or something to that effect, because he

was ill mannered and so on." Another witness, a ranger at Yosemite, testified that in September, 1940, appellant caused a scene at Camp Curry and Camp Cascades in Yosemite, and that respondent mildly chided her for making such a fuss. This witness testified that appellant charged that her husband "was a beast." The respondent testified that he was present when appellant made the charges above set forth to Dr. Strickland, and that his father recounted to him the conversation above set forth; that these and similar charges caused him embarrassment. He also testified that on the day they separated his wife had him arrested for nonsupport although she had sufficient funds received from him to support herself, and that these charges were later dismissed. He also testified as to a series of misunderstandings the parties had and various charges she had made against him. At one time, after he had joined the United States Army, she caused such a disturbance at the San Francisco Presidio that respondent was compelled to ask the military police to ask her to leave. The record also shows that in April, 1940, appellant filed a complaint in Los Angeles County for divorce in which she charged that respondent had treated her in a cruel and inhuman manner. This complaint was later dismissed by appellant, and on the present trial she admitted the charges therein were untrue, stating she had been induced to make them on advice of her then attorney. During the trial of the present case appellant charged in open court that her husband was a perjurer.

It is true that appellant denied most of these charges. This conflict was for the trial court. The contention that the statements and acts alleged to have been committed by her, even if true, do not constitute extreme cruelty, requires no serious consideration. This court, in the recent case of *Scheibe* v. *Scheibe*, 57 Cal.App.2d 336 [134 P.2d 835], reviewed the applicable legal principles involved in the following language (pp. 340, 341):

"As defined by section 94 of the Civil Code, extreme cruelty is the wrongful infliction of grievous bodily injury or grievous mental suffering upon the other by one party to the marriage; and ever since the decisions in *Barnes* v. *Barnes*, 95 Cal. 171 [30 P. 298, 16 L.R.A. 660], and *Fleming* v. *Fleming*, 95 Cal. 430 [30 P. 566, 29 Am.St.Rep. 124], it has been repeatedly held that no arbitrary rule of law can be laid down as to what particular facts must be proved to justify a finding

that the complaining party has undergone grievous mental suffering; that a correct decision in such cases depends upon the sound sense of justice of the trial court and that in each case it is a pure question of fact to be deduced from all the circumstances of each particular case, keeping in mind always the intelligence, apparent refinement and delicacy of sentiment of the complaining party. (*Thoele* v. *Thoele,* 102 Cal. App. 387 [282 P. 1001]; *Keener* v. *Keener,* 18 Cal.2d 445 [116 P.2d 1]; *Cline* v. *Cline,* 4 Cal.App.2d 626 [41 P.2d 588]; *Shaw* v. *Shaw,* 122 Cal.App..172 [9 P.2d 876].) Furthermore, it is held that in determining such question the trial court may consider acts committed subsequent to the separation of the parties. (*Palmanteer* v. *Palmanteer,* 11 Cal.2d 570 [81 P.2d 910].) It is apparent, therefore, that in the present case the question of whether the acts and conduct of the appellant were of such a nature as to inflict mental suffering upon respondent was one of pure fact for the determination of the trial court from all the facts and circumstances of the case; and while the state of the evidence may have been such as would have supported an adverse finding of cruelty, it is also legally sufficient to sustain an affirmative finding on that issue; therefore the trial court's conclusion is binding on appeal. In other words, as said in *Keener* v. *Keener, supra,* it is only where the evidence is so slight as to indicate an abuse of discretion that the trial court's conclusion will be disturbed; and in the present case it is our opinion that we would be unwarranted in so holding." (See, also, *Tomaier* v. *Tomaier,* 50 Cal.App.2d 516 [123 P.2d 548]; cases collected 9 Cal.Jur. p. 653, § 27.)

The contention that the evidence of cruelty was not sufficiently corroborated requires but brief mention. Dr. Strickland, Ranger Mernin and respondent testified as to the various acts of cruelty above set forth. It is true that some of the charges made by respondent were not corroborated, but this is not required under the law of this state. A single act of cruelty, if corroborated, even where it consists of making an unfounded charge or false imputation, is sufficient. (See cases collected 9 Cal.Jur. p. 661, § 34.) It is not required that the evidence be corroborated as to every fact and circumstance appearing in the record. If there is corroborative evidence of one or more facts which is, or are, sufficient to show cruelty, that is sufficient. (See cases collected 9 Cal. Jur. pp. 737 and 738, §§ 95 and 96.)

Appellant also contends that the specific finding on cruelty is in her favor. In the original findings the court found that "... defendant has ... spoken to and of *defendant* in an unreasonable, derogatory and insulting manner" etc. The appellant urges that speaking in a derogatory fashion of herself is not cruelty, and even if it were, there is no evidence that she so acted. It is apparent that this is an inadvertent clerical error and that the word "defendant" appearing in the above quotation for the second time was intended to be "plaintiff." The trial court, since the preparation of the record on appeal, has made a *nunc pro tunc* order correcting this obvious and palpable error in the findings.

The appellant next urges that there is no legally sufficient evidence to support the finding that respondent was a resident of California one year and of Mariposa County three months next preceding the commencement of the action as required by § 128 of the Civil Code, and that, even if respondent's testimony was sufficient on these issues, there was no sufficient corroboration. There can be no doubt, as appellant urges, that the requirements of section 128 are jurisdictional and must be affirmatively alleged and proved by the plaintiff, and that under section 130 of the Civil Code such evidence must be corroborated even where the issue is not controverted in the pleadings. The applicable principles have recently been reviewed by this court in *Eriksen* v. *Eriksen,* 57 Cal.App.2d 532 [134 P.2d 825]. It is there stated (pp. 535, 536):

"Ordinarily a failure by way of answer to deny allegations of residence in a complaint, or affirmative allegations in that regard by cross-complaint, preclude the introduction of evidence on that point as the allegation of the pleading is deemed to be admitted. (Code Civ. Proc., sec. 462.) This rule does not apply in a divorce action for the reason that the state has an interest in the continuance of the marriage contract and specifically prohibits the parties from obtaining a divorce by collusive agreement. (Civ. Code, sec. 114; *Kegley* v. *Kegley,* 16 Cal.App.2d 216 [60 P.2d 482].) In *Bennett* v. *Bennett,* 28 Cal. 599, it was held that while residence is not in itself a ground for divorce, it is the basis upon which jurisdiction rests. In *Flynn* v. *Flynn,* 171 Cal. 746, 748 [154 P.837], the court said: 'The well-settled policy of the law is to protect the marriage relation and to prevent its dissolution in any case, even where the parties consent to or

desire its dissolution, unless cause recognized by the law as warranting the same exists. Section 130 of the Civil Code provides, as it has ever since the year 1874, that "no divorce can be granted upon the default of the defendant or upon the uncorroborated statement, admission, or testimony of the parties, or upon any statement or finding of fact made by a referee; but the court must, . . . require proof of the facts alleged." The object of this provision is, of course, to prevent the obtaining of a divorce by collusion between the parties, where no lawful ground for a divorce exists. Its effect necessarily is to make it erroneous for a court to grant a divorce in the absence of some proof, independent of the admissions and statements of the parties, of the facts warranting such action. That a party appealing from a judgment of divorce may successfully urge such error as a ground for reversal, even though the essential fact was admitted by the pleadings, appears to follow, and was decided in *Bennett* v. *Bennett*, 28 Cal. 599.'

"Proof of residence is essential to jurisdiction, and a valid decree may not be founded upon a simulated residence. (*Warren* v. *Warren*, 127 Cal.App. 231 [15 P.2d 556].) A divorce obtained with the aid of an assumed residence as one of its bases is not in good faith. (*Kegley* v. *Kegley*, *supra*.) Parties may not by consent confer jurisdiction. (*Ryder* v. *Ryder*, 2 Cal.App.2d 426 [37 P.2d 1069].)"

■ The residence referred to in the statute is equivalent to domicile. In this respect there must be established both the act of residence and the intent that the same shall become the residence. (*Catsiftes* v. *Catsiftes*, 29 Cal.App.2d 207 [84 P.2d 258]; *Bragg* v. *Bragg*, 32 Cal.App.2d 611 [90 P.2d 329].)

■ So far as corroboration is concerned, it must be remembered that the reason for this rule is to prevent collusion. In a case which is hotly contested, as the one here involved, it is obvious that no collusion existed. In such a case the corroboration required is slight and its sufficiency is largely for the trial court. The applicable principles were thus stated in *Wilson* v. *Wilson*, 124 Cal.App. 655, 658 [13 P.2d 376]:

"No divorce can be granted upon the uncorroborated statement, admission or testimony of the parties (Civ. Code, sec. 130); and in an action for divorce on the ground of adultery

a confession of adultery, whether in or out of the pleadings, is not of itself sufficient to justify a judgment of divorce (Code Civ. Proc., sec. 2079). It has been held, however, that the principal object of the rule requiring corroboration is to prevent collusion; and where it is clear that there is no collusion, and the defendant's testimony, though conflicting with that of plaintiff in many of its details, in the more important matters was corroborative of the plaintiff's testimony, which was also corroborated in certain respects by other testimony, the corroboration is sufficient (*Smith* v. *Smith,* 119 Cal. 183 [48 P. 730, 51 P. 183]; *Andrews* v. *Andrews,* 120 Cal. 184 [52 P. 298]; *McMullin* v. *McMullin,* 140 Cal. 112, 119 [73 P. 808]).

"And it has been held that the fact that a defendant has vigorously contested the suit dispels any idea of collusion between the parties in the procurement of the divorce (*Hill* v. *Hill,* 106 Cal.App. 309 [289 P. 227])." These rules are particularly applicable to a case in which the main contested issue was whether cruelty existed, and where the allegations of residence were admitted in the answer.

The respondent testified that in February, 1939, he was permanently assigned to a C.C.C. Camp in Yosemite Valley, Mariposa County; that this constituted his "home" station thereafter; that this was his "permanent station"; that he was assigned to the Yosemite camp as his "permanent camp"; that he remained at this permanent camp until October, 1939; that thereafter he was "temporarily" assigned to other camps outside Mariposa County, but that he always returned to the Yosemite camp; that he met appellant there in June, 1939, and they spent their honeymoon there in October, 1939; that when he went to the other camps he was "on detached service"; that when the action was filed he was living at the Yosemite camp; that from April to June of 1940 he was on "detached service" in Monterey County, and then was sent to Florida on government business; that he remained in Florida one day and in Colorado two days awaiting transportation; that he then returned to the Yosemite camp; that he remained at the Yosemite camp thereafter until the filing of the action; that while he was in Monterey County from April 16, 1940, to about June 20, 1940, that was not his residence; that while there he "was on detached service from my home station in Yosemite Valley"; that he was assigned

to the Yosemite camp as his "permanent camp," and the other assignments "were merely temporary assignments"; that his residence in Mariposa County was continuous from February, 1939, until he filed the divorce action in September, 1940, with the exception of being absent temporarily.

This evidence shows that respondent took up his residence in Yosemite in February of 1939, and that thereafter he considered that station his home, although for short periods he was required by his employment to go elsewhere. Physical presence in the state and county for every day of the required periods is not indispensable where the evidence shows the act of residence plus the requisite intent. So far as the intent is concerned, the trial court was justified in inferring, as it did, that the requisite intent existed. The facts that he was "assigned" to the Yosemite camp, that there is no evidence that he ever voted or registered in Mariposa County, or that he ever paid taxes there, or joined any local organizations, while important, are not conclusive. The trial court was entitled to make any reasonable inference justified by the evidence. Read as a whole, the evidence shows the act of residence for the required periods, and the requisite intent to make Mariposa County his home is reasonably inferable from that evidence.

So far as corroboration is concerned, there is no reasonable doubt, and no serious contention is made to the contrary, that the evidence amply corroborates the fact that respondent was physically in the state more than one year prior to the filing of the action except for the brief visit to Florida in July of 1940. The appellant concedes they met at Yosemite in June of 1939 and were married in October, 1939. The only doubt that exists is whether there is sufficient corroboration of respondent's testimony that he was a resident of Mariposa County for three months prior to filing the action. In addition to appellant's own testimony as to her several visits to the Yosemite camp to see respondent during the requisite period (which evidence being of the adverse party in a divorce action, similar to the admissions in the answer as to residence, is not alone sufficient corroboration) the attorney for respondent testified that he first met respondent in March, 1940, in Mariposa; that he saw him several times in April and May, 1940; that he had visited respondent four or five times at his camp; that respondent during this period stopped

at the city of Mariposa "quite frequently. I believe he did his banking here." He concluded his testimony with the statement, made without objection from the then counsel for appellant, "It was more than three months prior to the time the divorce action was filed that he was a resident of the County."

Tested by the standards set forth above, while the corroborative evidence on the issue of residence was weak, in our opinion it was legally sufficient.

 Appellant next urges that, although the trial court found all of the allegations of the complaint to be true, it also made a specific finding on the issue of cruelty, and contends this finding is insufficient to support the judgment because this specific finding did not recite that the acts of cruelty were "wrongfully inflicted" and caused "grievous mental suffering." In other words, the specific finding merely recites that defendant treated the plaintiff in a cruel and inhuman manner. It is also urged that it does not appear from the specific finding when the cruel words were spoken, whether before or after the filing of the complaint. It is also urged that even though cruelty may be alleged in general terms the trial court must find specifically on the issue.

None of these contentions is sound. The complaint alleged that "throughout the married life of the parties hereto and particularly during the two months preceding the separation of said parties, defendant has treated plaintiff in a cruel and inhuman manner; that the acts complained of were done through no fault on the part of plaintiff, were without cause or provocation, and were wrong and unjust, and, as a result thereof, plaintiff has suffered great humiliation, anguish, distress, and mental and physical pain and suffering, all of which has caused him to become nervous and sick." This allegation of cruelty was sufficient under section 426b of the Code of Civil Procedure. It was found to be true by the trial court. The specific finding on cruelty also made by the trial court did not purport to contradict, restrict or limit the general finding. It merely recited that since the marriage of the parties "defendant has on numerous occasions in the presence and hearing of other persons, spoken to and of defendant [plaintiff] in an unreasonable, derogatory and insulting manner, which was calculated to cause, and did cause, plaintiff embarrassment, humiliation and mental pain

and suffering." While it is true that this specific finding is insufficient in that it does not state when the acts of cruelty were perpetrated or that they were "wrongfully inflicted," or that they caused "grievous" mental suffering, these deficiencies were all supplied by the general finding. ██ It is true, of course, that where a general finding is inconsistent with a specific finding, the latter controls. But that rule only applies to findings that are inconsistent. ██ It is the duty of the appellate court to reconcile the findings if that can reasonably be done. ██ Here the general finding is not inconsistent with the specific finding. It supplements, amplifies, complements and supplies the deficiencies in the specific finding. Read together the two findings are legally sufficient to support the judgment.

██ The contention that the findings should have been more specific is without merit. Since the addition of section 426b to the Code of Civil Procedure it is now permissible to plead cruelty in general terms. There was no demurrer to the complaint, nor was there any request for findings as to specific acts. Under such circumstances, a finding following the language of the complaint is sufficient. (*Bilger* v. *Bilger,* 54 Cal.App.2d 739 [129 P.2d 752].)

The other contentions of appellant are too unsubstantial to require discussion.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied November 17, 1943, and appellant's petition for a hearing by the Supreme Court was denied December 16, 1943.