[Civ. No. 3426. Fourth Dist. Jan. 8, 1946.]

RONALD A. BUSH, Respondent, v. PAULINE BUSH, Appellant.

Head, Wellington & Jacobs and Winthrop O. Gordon for Appellant.

Rutan & Tucker for Respondent.

BARNARD, P. J.—The defendant wife appeals from a judgment awarding her husband a divorce, custody of the minor child and approximately five-eighths of the community property. The parties were married in 1937; the child, a boy, was born in July, 1941; the parties separated on November 15, 1943; and this action was commenced on December 31, 1943.

The case is unusual in that the appellant in no way complains of the conduct of her husband. She testified that he worked steadily and brought his wages home; that he was helpful about the house and in caring for the baby; that he took her to shows and dances; and that he never quarreled or used harsh language toward her. He drove a bakery wagon, receiving around $200 a month and after his regular hours worked part-time at another place. The parties in about six years accumulated property worth between $8,000 and $9,000, including a nice home and furniture. The home was worth $7,000 and the encumbrance on it had been paid down to $900.

The baby was sickly from the time of his birth and the evidence clearly indicates that the appellant became dissatisfied with remaining in the home and caring for the baby. Two witnesses testified that she told them she would not have had the baby had she known how much trouble it was. When the baby was about a year and a half old she took a job against her husband's wishes and against the advice of her grandmother and aunt, her nearest relatives. She went to work as bookkeeper for an officer's mess at a Marine Base near Santa Ana. From that time her attitude toward her husband rapidly grew worse, although it had begun to change prior to that time.

About a year after the baby was born the appellant replaced the double bed the parties had used with twin beds. There is evidence that the appellant frequently refused to permit her husband to get in bed with her, giving as her reason "There are times when people have children that they don't care for each other any more, and that is the way she felt toward me." About this time the appellant began to go to places in the evenings which were different from those to which she had said she was going, at times going to dances in Los Angeles and Long Beach without her husband. She also tried to get him to join the army and when he had a week's vacation insisted that he go on a hunting trip rather than remain at home, which he wanted to do. A month before the separation these parties went to a dance with another couple. The appellant refused to dance with her husband after the first dance saying she was too tired, but she continued to dance with the other man when his turns came. On the way home she told her husband that she had not had a good time and that "I never enjoy going anywhere with you."

After the appellant went to work at the Marine Base she began to go around very considerably with a certain sergeant. She brought his picture home and put it on her dresser, brought him to the house at times, stayed late at the Marine Base and admits drinking there, and made trips with him to Los Angeles and other places. The respondent testified that he saw her kissing this sergeant while en route to Los Angeles in an automobile. While the appellant denied this she admitted kissing the sergeant on other occasions. She also admitted that she corresponded with the sergeant both before and after the separation; that she had his picture in her home; that she had taken trips with him to Los Angeles and Long Beach; that he helped her move from Santa Ana to Laguna Beach; that she took him to the train in Los Angeles when he left; and that she was still corresponding with him. On one occasion, after the separation, two witnesses testified that they saw the appellant and this sergeant entering the appellant's home in Santa Ana about 10 o'clock at night and that the sergeant had not left at 2:30 o'clock the next morning.

When the parties separated on November 15, 1943, the appellant told the respondent that she wanted him to leave. He told her that he would not leave without taking the baby

with him. She objected at first, but later consented. He took the baby and went to his mother's home and his mother took care of the baby for some nine or ten months. Apparently, the appellant had the baby for a month or two immediately preceding the trial. The appellant remained in the family home in Santa Ana for some months after the separation and changed the locks on the doors so her husband could not get in. Later, she left the house vacant and removed to an apartment in Laguna Beach, for which she paid $69 a month. While she testified that she made this move because she thought the house was going to be sold other portions of her testimony strongly indicate other and more personal reasons for the change.

The court found that the appellant had been guilty of extreme cruelty and that she had wrongfully and without cause inflicted upon the respondent grievous mental cruelty. It was then found that the acts constituting extreme mental cruelty were in part as follows: that on November 15, 1943, the appellant told the respondent that she no longer loved him, would no longer live with him and wanted him to leave their home; that prior thereto she had on numerous occasions requested the respondent to live apart from her and requested him to join the army and had requested him to spend his vacation away from their home; that she secured employment at a military base and not only spent her working hours away from home but also remained away in the evenings on numerous occasions; that some months prior to November 15, 1943, she became acquainted with (the sergeant) and wrote to him and brought his picture home; that before this action was brought she accompanied this man from Santa Ana to Los Angeles and on the trip kissed him several times, all of which was known to the respondent; that at the time of requesting the respondent to leave the home the appellant consented to his taking the child with him; that the appellant remained in the home which was fully furnished for several months, and then at considerable expense moved to an apartment in Laguna Beach where it would not be as convenient to learn of her conduct as it would have been in her old home in Santa Ana, and which apartment was in a beach resort where the appellant would have more opportunity for amusement and association with other parties; that several weeks prior to November 15, 1943, the appellant told the respondent that she was going to a show with a girl friend and instead went

to amusement places in Long Beach and did not return until after 2 o'clock a. m. of the following morning; that while the respondent was away the appellant went to a dance in Los Angeles and upon his return told him nothing about going to the dance; that on one occasion when they went to a dance with another couple the appellant told the respondent that she no longer wished to dance with him but continued to dance with the other man who accompanied them, and on the way home told the respondent that she did not enjoy dancing with him and did not enjoy going to parties with him; that on many occasions the appellant refused to allow the respondent to come in bed with her and if he was allowed to come she acted in a cold and distant manner, and on one occasion she told him that since the birth of the child her feeling and attitude toward him had changed; that beginning with a number of months prior to their separation the appellant engaged in a course of conduct which was designed by the appellant to cause the respondent to leave her; that on numerous occasions she told him that she no longer loved him; that for about two months prior to the separation she treated the respondent in a cold and distant manner; and that all of the acts above mentioned are but parts of a general course of conduct, all of which constituted extreme cruelty, and that said course of conduct and said acts and each of them wrongfully inflicted upon the respondent grievous mental suffering.

It was then found that the minor child of the parties was sickly in his early years and was weak at the time the appellant took work; that regardless of this fact the appellant left the child in the care of others while she was away from home at work, and at least on one occasion the child became seriously ill while in the care of others; that the appellant, prior to the bringing of this action, associated with at least one man who was not her husband; and that she is not a fit or proper person to have the care and custody of the child.

The appellant contends that the court's findings of extreme cruelty are not supported by the evidence and that these findings are not sufficient to support the judgment for divorce. It is first argued that the evidence is insufficient because it does not appear that the respondent or any person in his behalf directly testified that the acts of the appellant, as shown by the evidence and as found by the court, caused him "grievous mental suffering." It does not appear that the respondent was asked any such question or that he testi-

fied directly to that effect. However, to a man of the kind which the entire evidence shows the respondent to be, the acts of the appellant were such as to inevitably cause grievous mental suffering. Not only was the court justified in drawing that inference from the evidence but no other inference could reasonably be drawn. The respondent was before the court, the facts were fully brought out, and it would have added nothing for the respondent to have testified as to his mental suffering, a thing which clearly appeared both from his testimony and from his actions over a period of months.

It is further argued in this connection that some of the findings of extreme cruelty are not supported by the evidence, and that facts appearing in the testimony but not specifically found by the court may not be taken into consideration. The court found the ultimate facts and some of the probative facts. Some of the other probative facts, although not specifically found, do furnish support for the ultimate facts found. Specifically, it is argued that the findings that the appellant told the respondent that she no longer loved him and that she would no longer live with him, and that she moved to Laguna Beach "in order to carry on certain unstated activity" are not supported by the evidence. In these, as in some other matters, the appellant relies only on her testimony, which was not accepted by the court. While there may be a slight variance with respect to the exact language used, the court having summarized the effect of portions of the evidence, these findings are fully supported by the record. The essential findings to the effect that the appellant completely changed her attitude toward the respondent sometime after the birth of the baby, that she lost her affection for him, that she told him so in words and much more so by her actions, that she grew tired of caring for the baby and the confinement of the home, that she preferred employment elsewhere, and that she continued to associate with another man in a manner entirely improper for a married woman were not only fully supported by the evidence but were, in fact and in their essence, admitted by the appellant in her own testimony. Many of the facts which were not specifically found fully support the court's ultimate findings.

There is no merit in the further contention that there was no corroboration of the respondent's charges of extreme cruelty. Where there is no collusion, as was the case here, the corroboration required is slight. (*Ungemach* v. *Ungemach*,

61 Cal.App.2d 29 [142 P.2d 99].)   Aside from the many admissions of the appellant most of the facts found were corroborated by other witnesses and it could not be held that there is any lack in this regard.

The appellant's further contention that the court was without power to give more of the community property to the respondent than to the appellant since no extreme cruelty was established is sufficiently answered by what we have already said.   The findings, which are amply supported, sufficiently support the judgment with respect to the matter of extreme cruelty.

The only other point raised is that there was no competent evidence ''which tended to show any loose or immoral conduct on the part of the defendant wife, or any neglect that either injured the health or physical well-being of her own child,'' and that it follows that the court abused its discretion in depriving her of the custody of the child.   Section 138, subdivision (2) of the Civil Code provides that neither parent is entitled to the custody of a child as of right but that ''other things being equal'' it should be given to the mother where the child is of tender years.   While that is the general rule the qualifying clause in the statute ''but other things being equal'' necessarily leaves a large degree of discretion with the trial court.   (*Phillips* v. *Phillips,* 48 Cal.App. 2d 404 [119 P.2d 736]; *Taber* v. *Taber,* 209 Cal. 755 [290 P. 36].)

The situation here, while an unfortunate one, was a practical one which the court had to meet.   The father had been keeping the child at the home of his mother, who was 51 years old and who, as the appellant herself testified, was taking perfect care of the child.   While it may be true, as the appellant argues, that there is no evidence to show that she was actually immoral or vicious it does appear that she was entirely responsible for breaking up what seems to have been an unusually good home.   It seems to be the old story where a young woman not only desires to live her own life, but claims an inherent right to live it at the expense of others. While this mother may not be inherently bad it appears, beyond question, that she tired of her home life and of the work of caring for the baby and that she not only sought outside activity, including some degree of night life, but that she preferred to go around with a man other than her husband, carrying on a relationship with him which was decidedly

improper and one which, if persisted in, could have no result other than to break up this home. During the interval between the separation and the trial of the action she continued this outside relationship, and there is not the slightest evidence in the record that she was either changing her conduct or had in any degree changed her attitude toward her responsibilities in life. Under these circumstances and in the absence of any such change in her attitude, or in the conditions under which she was living, it cannot be held, as a matter of law, that the court abused its discretion in awarding custody of the child to the respondent, at least for the time being. That is a matter which not only must necessarily be in the sound discretion of the court, but it is one which is subject to change at any time when conditions warrant. However, any change with respect to the custody of this child should properly rest upon and be governed by whether or not the appellant changes her attitude toward her responsibilities and her manner of living.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied January 29, 1946, and appellant's petition for a hearing by the Supreme Court was denied February 25, 1946.