[Civ. No. 6073.   Fourth Dist.   May 10, 1960.]

GEORGE HENRY SANTENS, Respondent, v. GEORGI-
ANNA SANTENS, Appellant.

GEORGIANNA SANTENS, Appellant, v. GEORGE
HENRY SANTENS, Respondent.

John T. Hourigan and Louis L. LaRose for Appellant.

Mack, Bianco, King & Eyherabide and D. Bianco for Respondent.

GRIFFIN, P. J.—From decrees rendered in these two consolidated actions in favor of respondent George Henry Santens and against appellant Georgianna Santens, his wife, she appeals.

In the divorce action number 50649, the husband first alleged extreme cruelty of the wife, that there was no community property, and that by a property settlement agreement all property had been distributed to the respective parties in accordance therewith. Custody of the three minor children was sought by respondent.

Appellant wife answered; denied respondent's fitness to have such custody; denied there was no community property; admitted that a purported property settlement agreement was signed but claimed it was illegal and void for want of consideration and because it was procured by means of coercion and threats on the part of respondent; and denied the remaining allegations of respondent's claim. By way of cross-complaint, she alleged that she was a fit and proper person to have custody of the children and alleged certain described real and personal property, valued in excess of $250,000, as being in possession of respondent. A divorce was sought on

the grounds of extreme cruelty and alleged fraud on the part of respondent in obtaining her signature to the separation agreement and deeds and conveyances executed therewith. She sought a divorce, custody of the children and a fair and equitable distribution of the community property and prayed for an order that respondent be enjoined from disposing of it. The separation agreement was attached to the cross-complaint. Subsequently, respondent amended his complaint to allege an additional cause of action for adultery, naming the alleged corespondent and asked the court to approve the settlement agreement and make distribution of the property accordingly.

By answer to the amended complaint, appellant denies generally these allegations as to the first cause of action, but makes no specific denial as to the second cause of action alleged (adultery). Appellant's action number 50664 was to cancel a deed dated December 2, 1957. Therein she alleged that she was the owner "in fee" of the 94 acres there involved. Respondent answered the complaint, denied generally its allegations, and by way of cross-complaint sought a decree quieting his title to the property.

After pretrial order was signed stating the issues, a trial by the court resulted in a finding in case number 50664 that all the issues were fully tried in case number 50649 and that the determination in that case disposed of the issues in case number 50649, and a decree was accordingly entered therein. In case number 50649, the court found that respondent was a fit and proper person to have custody of the three children; that appellant was not; and that it was for the best interests of the children that custody be awarded to the father; and that appellant was guilty of extreme cruelty and adultery and that respondent was entitled to a decree of divorce. It further found that all described property was community property, and, in lieu of awarding the wife a portion of it, awarded her a lump sum of $40,000.

Appellant first argues that certain specified findings made were insufficient, that they should be more specific and that they left important factual issues undetermined. (Citing *Kaiser* v. *Mansfield,* 141 Cal.App.2d 428 [297 P.2d 98].) These findings mainly involved the court's judgment in distributing all specifically described real property to respondent as an award of community property in lieu of a judgment for $40,000 in favor of appellant.

In determining this question, it is necessary to recite the historical background in reference to the acquisition of these

several properties by the parties, the manner in which they held and treated them, and the effect of subsequent transfers of record title.

Appellant and respondent were married in 1942. Respondent farmed with his father in that year. Respondent acquired 40 acres (home place) from his father and a house was moved onto the property. It was thereafter extensively improved by respondent and appellant at a cost of approximately twenty to thirty thousand dollars. In 1946 they purchased, as joint tenants, a 214-acre plot for $6,500 from respondent's father, who took back his trust deed as part of the purchase price which was never paid. The father testified the trust deed just "went up in hot air." Between 1946 and 1949, extensive improvements were made to it and paid for out of the farming income. During the next 15 years it increased considerably in value. Because of the 160-acre irrigation limitation, the 214-acre tract was split up into separate ownerships by deeds duly recorded and dated November 7, 1949. Title to 120 acres went to respondent and his heirs and title to 94 acres to appellant and her heirs. At the same time respondent had appellant execute a deed conveying her 94 acres back to respondent in case trouble arose between them. That deed was not recorded until December 10, 1957, after the commencement of this action.

In 1954 respondent traded some of the 214 acres to the State of California for right-of-way purposes in exchange for other contiguous property, and title to that strip was taken in the name of appellant and respondent as joint tenants on December 7, 1954. In 1957 respondent signed a formal statement to the bank declaring that the title to the 254-acre tract was in himself and wife. In 1956 respondent took title as co-tenant with Henry J. Santens to 50 acres in San Luis Obispo County. In 1956 respondent declared in a financial statement that all of this property was owned by them. Appellant's appraiser appraised the 40-acre home property at $54,000; the 214 acres at $155,000, personal property at $12,550; and the San Luis Obispo property at $106,500. Respondent appraised the 40 acres at $36,000, the 214-acre plot at $107,000, the farm machinery at $7,650 and the San Luis Obispo property at $62,000.

The testimony is that some time after their marriage, matrimonial difficulties arose. Respondent accused appellant of adulterous conduct with another man, which acts she confessed. They, with the other man and his wife, held a joint conference about their mutual problems. Appellant testified

respondent admitted a previous adulterous act with another woman and after further discussion they all agreed to attempt a reconciliation. It appears that respondent had further apprehensions as to his wife's conduct with this same man, and in October, 1957, he consulted an attorney about his property rights. A title search was obtained and a blank deed was drawn conveying the 94-acre tract from appellant to respondent. The attorney was not informed of the unrecorded deed from appellant to respondent executed on November 7, 1949. A property settlement agreement was also prepared which, in effect, gave to the wife certain described personal property and to the husband, as his separate property, certain described personal property and all of the real property above mentioned including waiver by the wife of support money and right to the custody of the three children, subject to the order of the court and an agreement to pay the wife $2,500. These unsigned documents were turned over to respondent, who employed a detective and installed electronic equipment in the home, set up a telephone tap wire, and laid a trap by telling appellant's paramour that respondent would be away on a certain evening. It appears that that evening appellant was visited by the paramour. Respondent, the detective and respondent's attorney, as well as peace officers, with guns, entered the home and found appellant and her friend in a compromising situation. Respondent and his attorney presented the blank deed and property settlement agreement, as thus prepared, for her to sign and she signed, being more solicitous about retaining custody of the children rather than of the property, but she did say she was quite disturbed and felt she was entitled to some portion of the property after 15 years of married life. The deed bears the date of December 2, 1957, and it was acknowledged by respondent's attorney and recorded on December 3, 1957, at his request.

This action, as indicated, was filed on December 3, 1957. On December 10, 1957, the unrecorded gift deed of October 27, 1949, was called to the attention of respondent's attorney and he recorded it. Appellant complains because the court's finding did not sufficiently decide the legality of this unrecorded deed of 1949, particularly since the pretrial order indicated that its validity was one of the points in issue.

In addition to other allegations, the court did specifically find that the parties entered into a property settlement agreement on December 3, 1957, but found the signature of appellant was obtained by coercion, intimidation and was there-

fore void and of no effect. A similar finding was made as to the deed of the 94 acres signed on December 2, 1957. It then found that appellant was guilty of extreme cruelty and adulterous conduct as alleged; that the real property, particularly described and received as joint tenancy property, was so taken without any intent that it should be joint tenancy property, and by the acts and conduct thereafter and the dealings with it and by oral agreement, the parties agreed that their interest in it would be community property; that this, as well as other real property described, was community property of the parties, in addition to certain described personal property and found the entire value of all property to be $225,000.

The general finding was then made that none of the allegations of respondent's amended complaint, the answer thereto, the cross-complaint and answer thereto inconsistent with the foregoing findings were true.

Appellant points to the memorandum decision of the trial judge where he said he feels ''that the deeds drawn . . . in 1946 . . . were but a subterfuge to evade the 160-acre provisions of the federal law and did not alter the nature of the property'' and argues that it cannot be determined from the findings whether the trial judge held them to be void or whether title to the 94 acres still remains in appellant. (Citing such authority as *Maulhardt* v. *California Director of Public Works*, 168 Cal.App.2d 723 [336 P.2d 631].)

The specific finding, when considered in connection with the general finding that all of the real property was community property of the parties, regardless of the manner of holding, is clearly indicated.

Appellant made claim in her cross-complaint and alleged that it was community property with a considerable degree of particularity and described it (including the 94 acres) by metes and bounds. It is true that in the complaint for cancellation of the deed, she alleged that she was the owner *in fee* of the 94 acres and asked that the deed of December 2, 1957, be cancelled. It was set aside and the court found other allegations inconsistent with these findings to be untrue. In the cross-complaint, after describing the 94 acres in part as being community property, it did allege plaintiff signed the deeds and conveyances of both community and *separate* property, without particular description of the property involved.

Appellant may not now complain if the court found in accordance with the admissions and allegations in her com-

plaint alleging all of the property to be community property. These admissions and allegations could be considered in connection with the other facts produced. ▆▆ The findings need only to dispose of ultimate issues and if, taken together, they do dispose of such issues, the requirements of law have been met. (*Tower* v. *Wilson,* 45 Cal.App. 123 [188 P. 87]; *Bloss* v. *Rahilly,* 16 Cal.2d 70, 77 [104 P.2d 1049].) ▆▆ Where special and general findings are inconsistent or in conflict, the special findings will control. (48 Cal.Jur.2d 313, sec. 311.)

▆▆ Appellant argues that there was no sufficient evidence produced by respondent to support the finding that title to the property held as joint tenants did not in fact reflect the true nature of their holding and that it was orally agreed that it was to be community property. (Citing *Siberell* v. *Siberell,* 214 Cal. 767 [7 P.2d 1003]; *Benom* v. *Benom,* 173 Cal.App.2d 286 [343 P.2d 638].)

There is considerable evidence that the parties did, in fact, have some community property interest in the real properties mentioned as a result of their joint efforts, earnings and accumulations. They dealt with it as being community property as well as separate property by exchange of deeds. They signed joint income tax returns on it. The property settlement agreement, although subsequently set aside, did contain a solemn declaration by both parties that "the Husband shall hereafter own as his separate property the following property which was previously the community property of the parties." Then follows a description of all the property here involved. When appellant signed the property settlement agreement she stated, "I told George I didn't want any of his land. . . . You know I don't want that land. I don't feel it is mine. The land was here before we were married and I feel it is in their family." This same position was reiterated by another witness when he testified that appellant told him that ". . . as far as the property is concerned, naturally, I feel I am entitled to something after 15 years of married life with my husband, but as far as the real property is concerned, I have always felt that that was the Santens' piece of property, and I don't feel I am entitled to that."

▆▆ Regardless of the claimed insufficiency of the evidence of an oral agreement as to the manner of holding the community property, it also appears to be the law that admissions and allegations in a party's own pleading might well sustain a finding of fact in accordance therewith. (*Bloss* v. *Rahilly, supra; Driver* v. *International Air Race Assn.,* 54 Cal.App.2d

614, 620 [129 P.2d 771].) It was so held in *Johnston* v. *Johnston*, 106 Cal.App.2d 775 [236 P.2d 212] (see also p. 778), under similar circumstances:

"A finding in a divorce action that, after the parties acquired certain parcels of real property and caused the title thereto to be taken and recorded as joint tenancy property, they orally agreed that their interests therein would be community property is supported by plaintiff's admission in the complaint that the property mentioned in such finding is community property."

Appellant's verified allegation was that all the property, even though taken as joint tenants, was community property. She made this representation to the trial court that she had so alleged and the court found in accordance with her contentions. This could be considered evidence of the fact that it was to be held as community property even though appellant may have claimed, in the cancellation action, that title to the 94 acres was held by her in fee. We do not feel that, under the circumstances cited and in view of the evidence, appellant is now in a position to question the finding.

Next, appellant claims that the trial judge's unequivocal finding shows the entire community property to have a valuation of $225,000 and that this is not in accordance with his previous written memorandum decision wherein he stated it to be "in excess of $225,000.00," and accordingly, due to this variance, it was error to allow a sum of money in lieu of the community property interest without a specific finding of the value of the property. (Citing *Villafuerte* v. *Villafuerte*, 125 Cal.App.2d 466, 469 [270 P.2d 526].) We see little merit to this argument. Under the circumstances related, the remarks of the trial judge cannot be considered for the purpose of impeaching the signed separate findings. (*Scholle* v. *Finnell*, 173 Cal. 372, 376 [159 P. 1179]; *O'Neill* v. *O'Neill*, 147 Cal.App.2d 596 [305 P.2d 1003].)

Appellant complains because the trial court found and unnecessarily branded her as being unfit and found respondent to be a fit person to have custody of the minor children, and argues that even though the evidence might justify such a finding as of the date of filing the action, such condition did not exist as of the date of the trial because of her subsequent good conduct and behavior. She presented the same question on an application to amend the findings at the conclusion of the trial, which was rejected, and again on a motion for a new trial. She cites such authority as *Prouty* v.

*Prouty,* 16 Cal.2d 190 [105 P.2d 295], and *Guardianship of Jones,* 86 Cal.App.2d 35, 38 [194 P.2d 141], in support of her argument. It is further claimed that since the court did grant her visitation rights with the two older children for one month during the school summer vacation, such finding was directly opposed to the court's finding that it was for the best interests of the minors that respondent have custody of them.

We are in agreement with appellant that there was, as between the husband and wife, no necessity of branding either as unfit to have custody of the children. Section 138, Civil Code, contemplates that the care of a minor child be awarded to a parent, if a fit and proper person. (*Holsinger* v. *Holsinger,* 44 Cal.2d 132 [279 P.2d 961]; *Stewart* v. *Stewart,* 41 Cal.2d 447, 451 [260 P.2d 44]; *Smith* v. *Smith,* 135 Cal.App. 2d 100 [286 P.2d 1009].)

There is considerable evidence of respondent's past conduct which, if true, would cast considerable doubt on the subject of his being a fit and proper person to have custody of the children. However, the trial court did determine that it was for the best interests of the children that custody be awarded to him. That finding was sufficient and had evidentiary support and was not in conflict with other necessary findings.

Argument then followed that the court erred in finding respondent not guilty of extreme cruelty under the evidence where it affirmatively shows his conspiracy to subject his wife to the embarrassment here shown and his conduct in securing her signature to the property settlement agreement and to the deed and exclaims that the outrageous conduct of the husband should not go unrecognized. The argument is that, had the trial court made such finding, she would have obtained a more equitable distribution of the community property. We see little merit to this argument. Under section 146, subdivision 1, Civil Code, the court has authority to make such distribution of the community property as it deems just. The court had before it all the facts and circumstances related and specially found as to the nature and extent of the community property and made distribution accordingly. The evidence supports this finding and no abuse of discretion appears.

In deciding where custody of children shall lie, the courts are not engaged in a disciplinary proceeding to punish parents for their weaknesses as individuals nor to reward the unoffending parent for any wrongs suffered by the sins of the

other. (*Ashwell* v. *Ashwell*, 135 Cal.App.2d 211, 217 [286 P.2d 983].) It is true that in a modification proceeding the fitness of a parent to have custody of the children refers to his or her fitness at the time. (*Prouty* v. *Prouty, supra.*) Prior misconduct must have a direct bearing on the issue of present fitness and may be considered in connection with it.

The judge, when both parties to the marriage show grounds for divorce, may in his sound discretion grant the divorce solely to the party whom he finds less at fault on the weight of the whole evidence. (*Gilmore* v. *Gilmore*, 45 Cal.2d 142, 148 [287 P.2d 769].)

This does not mean that the court, when granting a divorce to the husband for the wife's adultery, must likewise grant the wife a divorce. (*Taylor* v. *Taylor*, 150 Cal.App.2d 104, 107 [309 P.2d 508].)

In a controversy between divorced parents over the custody of a child, it is the child's welfare and not the shortcomings of the respective parties which is determinative, and an abuse of discretion must be clearly established before the reviewing court will interfere with an award of custody of a minor child. The fundamental matter before the court is what is best for the children. The morals or lack of morals of either of the parents, their financial condition, the age of the children, their temperament and love of either or both parents, are all factors to be considered by the trial court in determining the best interests. (*In re Coughlin*, 101 Cal.App.2d 727 [226 P.2d 46].) While a lower court is not legally bound to award custody to the innocent spouse in an adultery case, the trial courts of this state have found that the best interests of the children in such cases would be best subserved by awarding them to the innocent spouse. (See *Currin* v. *Currin*, 125 Cal.App.2d 644 [271 P.2d 61] ; *Warren* v. *Warren*, 127 Cal.App. 231 [15 P.2d 556] ; *Bush* v. *Bush*, 72 Cal.App.2d 487 [164 P.2d 774] ; *Russell* v. *Russell*, 20 Cal. App. 457 [129 P. 467].)

It was apparent from the trial judge's opinion, cited by appellant, that at the hearing on the custody order to show cause, he was not convinced appellant would refrain from further seeing her corespondent and at that time he did not believe she meant what she said about being willing to do so. The discretion of the trial court is so broad in cases of this character that it is difficult to say, in most cases, that the discretion has been abused. Further relief may be available to appellant herein upon showing of a change of conditions

justifying it. (*Prouty* v. *Prouty, supra,* 16 Cal.2d 190.)

Lastly, appellant's attorney contends the allowance made to appellant for attorney's fees was inadequate, since the trial of the action covered 15 days and other necessary preparation for trial, and he emphasizes that the case was sensational in nature and likely to result in loss of clients to him and accordingly a greater fee should have been allowed. We may concede the argument to be true. However, appellant was awarded a considerable sum in lieu of community property. The trial court may well have taken this fact in evidence in determining what respondent's share of the total fee earned he was obligated to pay. No abuse of discretion appears.

Decrees affirmed.

Coughlin, J., concurred.

A petition for a rehearing was denied May 27, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 6, 1960.