[Civ. No. 28708. Second Dist., Div. Two. Mar. 21, 1966.]

JERRY IRVING BIALAC, Plaintiff and Appellant, v. LYNN CONNOR BIALAC, Defendant and Respondent.

 

Belcher, Henzie & Biegenzahn, William I. Chertok and Frank B. Belcher for Plaintiff and Appellant.

Newell & Chester and Robert M. Newell for Defendant and Respondent.

ROTH, P. J.—This appeal involves the award of custody of two children of tender age to the mother. The parties were married in Los Angeles in November of 1955. A daughter, Lisa, was born on July 29, 1956, and a son, Cary, on November 30, 1957.

Shortly after the marriage, the parties moved to Phoenix, Arizona. The marriage was a 'difficult one from the outset.

In the spring of 1961, the parties separated, and the wife filed for divorce in Arizona. This suit was eventually dismissed by the Arizona courts for lack of jurisdiction.

In October of 1961 Mrs. Bialac, with the permission of the Arizona court, took the children to Detroit, Michigan, where she resided with them at the home of her parents until the commencement of the winter term at Michigan State University in East Lansing, where Mrs. Bialac enrolled in college.

In June of 1962, Mrs. Bialac returned to Phoenix for her trial. When it was dismissed by the court she fled with the children back to Michigan by a rather circuitous route, apparently in fear that her husband intended to seize the children from her.

Her fears were well founded, for in July of 1962, Mr. Bialac went to Detroit and secretly took custody of the children, returning with them to California. During the period commencing with July 1962, until proceedings were commenced in the matter before us approximately May 1964, the whereabouts of the children were kept secret from Mrs. Bialac, who finally discovered their location through the services of a detective agency.

On August 5, 1963, the children still being in the custody of Mr. Bialac, Mrs. Bialac commenced a divorce action, and after constructive service of the husband, obtained a default decree in Michigan. The decree specifically left open the matters of child custody, child support, alimony, and the division of community property.

The proceedings in the case at bench were commenced by the husband on May 22, 1964, to settle the issues left open by the Michigan decree.

A lengthy trial produced abun'dant evidence of sexual misconduct on the part of Mrs. Bialac, much of which she admitted. Insofar as evidence of sexual misconduct is peculiarly pertinent to a question of custody, it was shown that on at least two occasions such misconduct was in the apartment where the children lived with the mother; that on a number of occasions while the children were in her custody, she did not return to her apartment until the early hours of the morning and that the illicit relations proved were not with the same man. It was also proved that Mrs. Bialac was foun'd to be in contempt by the Arizona court because of disobedience to the court's orders. There was evidence too of Mrs. Bialac's character background, type of life she led, family ties and of her love, devotion and enlightened interest in the welfare of each child. Conversely, the record is replete with evidence of the character of Mr. Bialac and of the many other facets pertinent to custody which courts and all persons with wholesome perspective think important to the upbringing of children. In a'ddition, there was evidence that during the time Mr. Bialac had vested himself with custody of the children, such custody had a deteriorating effect upon the boy.

The court found that "[b]oth parties are fit and proper persons to have and be awarded the custody of the minor children of the parties hereto. The best interests of said minor children require that their care, custody and e'ducation be awarded to defendant, with plaintiff to have the right of reasonable visitation upon giving forty eight (48) hours notice to defendant. . . ."

Mr. Bialac appeals from that portion of the judgment awarding custody of the children to his ex-wife. He urges: First, that the evidence is insufficient to support the finding that Mrs. Bialac is a fit and proper person; and Second, preju'dicial error was committed in excluding evidence of a telephone conversation between Mrs. Bialac and a man with whom she was involved, which was intercepted by Mr. Bialac. The intercepted conversation proved sexual indiscretions and deviations.

We do not consider it pertinent to review the record in detail. The trial judge heard all the evidence, saw at close range the parties and all the witnesses. The record demonstrates he was objective an'd a thoroughly sophisticated and sensitive listener. ▮ In a written statement to both

parties, he set forth what we consider to be a fair and concise summary of the evidence, an analysis thereof, and solid conclusions of its relationship to the issue of child custody. Pertinent portions of that statement follow:

"In the Arizona case between Mr. and Mrs. Bialac, . . . it was agreed between the parties that custody would be in the mother. At that time Mr. Bialac apparently craved television more than wife or children; nor did he substantially help her with the care of the children. The Arizona decision was rendered by the time she committed seriously wrongful acts, of which there is rightly complaint. How much her wrongful attitude and acts were attributable (although they may not thusly be condoned) to his attitude and acts is something that cannot be decided. She (and again we cannot say how much a guilty conscience contributed) thereupon took the children to Michigan, where their life was substantially normal and where hers might be said to have been. Mr. Bialac visited his children there, and there was no real complaint or problem until he violently and without notice spirited them away. His extra-legal acts, . . . apparently gave rise to litigation he has been unwilling to face. Is this an indication of character? It may be considered, in view of his great expenditures, that money alone did not prevent him from answering the charges against him, both civil and criminal. . . . In any event, his spiriting away of the children was apparently either to punish her or based upon what occurred prior to her going to Michigan some time before. . . . He thereupon took elaborate and extra-legal and rather childish methods, secreting himself and the children, serving personally as the watchdog. In this connection he set up a mode of life for the children which somewhat copied the mode of life of patrons of the Bonner School[1] which they attended. . . . In other words, apparently anticipating further problems but primarily to look after the welfare of the children, he overdid, and while the children were not brought into court here to testify there is substantial evidence that the boy, whose IQ is normal, lost a year out of his school life and a normal pattern of child life was not attained. It would appear that a normal pattern of child life is now in progress in Hermosa Beach, California, where the children are now with the mother. . . .

---

[1]The Bonner School was a private school in the Brentwood area of Los Angeles, which the Bialac children attended while under their father's care. The school was apparently an exclusive one, attended by the children of wealthy parents.

"It would seem that the best interests of the children would be to have them living where the court feels would be their best permanent environment, which is Detroit, Michigan, in a community there overflowing with friendly children of their own age, with a good school or schools, country club privileges, grandparents who take an interest in them (from the evidence, they do not have this on Mr. Bialac's side, other than to furnish funds to their father), a summer vacation home, a community in which the mother grew up and is accepted, can call on their relatives for help, etc. . . . As I have indicated, he [Mr. Bialac] is over-anxious, over-nervously active and over-protective of the children. He is admittedly neglecting his finances, his future—and these are the future of his children—by his overprotectiveness. . . ."

In a prior statement by the trial judge to the parties, he stated: "The mother did very wrong, but the preponderance of evidence is that the children will be better off with her and that she does have true affection and interest in them, and I find her to be now fit. She has not been improperly involved to the detriment of the children for a substantial period of time. The preponderance of evidence is that she has a desire for a normal married sex life. . . ."

■ The decisive rule in respect of child custody appears in Civil Code, section 138: ". . . [T]he court may . . . during the minority of any of the children of the marriage, make such order for the custody of such minor children as may seem necessary or proper and may at any time modify or vacate the same. In awarding the custody the court is to be guided by the following considerations:

"(1) By what appears to be for the best interests of the child . . .;

"(2) As between parents adversely claiming the custody, neither parent is entitled to it as of right; but other things being equal, if the child is of tender years, custody should be given to the mother; . . ."

The rule is clear and it is simply stated in the code section. Legal guidelines for its application are vague. The factual situations to which it must be applied are often explosive, ambiguous in their effect and require more than human wisdom and foresight to assess. The parties are properly sensitive but too often the desire to obtain custody of a child by a parent has calculated or unconscious undertones to hurt the other. Every trial judge, it must be assumed, decides this explosive and sensitive question—on the sole principle of the

child's best interests. In cases such as the one at bench, the broad discretion of the trial judge is the best refuge of an appellate court. "In determining whether other things are equal within the meaning of this rule the trial court is necessarily allowed a wide latitude in exercising its discretion. Its discretion will not be reversed on appeal unless the record presents a clear case of abuse. (*Goto* v. *Goto*, 52 Cal.2d 118, 123 [338 P.2d 450]; *Munson* v. *Munson*, 27 Cal.2d 659 [166 P.2d 268].) . . . There is no fixed scientific formula for the care of children, and no one standard of what constitutes a child's best interests. Necessarily, the judge whose duty it is to make such a decision views the matter in the light of his own attitude and experience, realizing as he must that someone else, equally wise, might see the matter differently." (*Coddington* v. *Coddington*, 210 Cal.App.2d 96, 100 [26 Cal.Rptr. 431].) Only in a clear case of abuse will appellate courts interfere (*Prouty* v. *Prouty*, 16 Cal.2d 190, 191 [105 P.2d 295]; *Combs* v. *Combs*, 162 Cal.App.2d 33, 34 [327 P.2d 164].)

In the case at bench, it is not questioned that the children who were eight and six years old at the time of judgment, were "of tender years" within the meaning of Civil Code, section 138. That section prescribes that in such a circumstance, "other things being equal," the mother should be awarded custody. Appellant, of course, contends that other things are not equal and that this court must so find as a matter of law. This contention is aptly answered by the following quotation from *Stack* v. *Stack*, 189 Cal.App.2d 357 at p. 365 [11 Cal.Rptr. 177]:

"Who is to say that 'other things' are 'equal'? The trial court. How is this to be determined? Each case must be determined upon its own facts. [Citations omitted.]

". . . When are 'advantages' equal? How does one weigh a better house against a mother's love or, for that matter San Francisco with the father and relatives against Kansas plus a mother's love? We confess that we do not know; no doubt that is why the books are so full of language about the broad discretion given the trial court. Except in rare cases, the appellate courts abdicate in favor of the trial court's order, because they do not know what else to do."

The trial judge did not condone the misconduct of Mrs. Bialac; he had it clearly in mind. Sexual misconduct per se does not render a mother unfit. There was no showing

that convinced the trial court or which convinces us that the children knew or were old enough to suspect or that there was so much done in their presence that they might be expected to suspect anything about their mother's misconduct.

 "In deciding where custody of children shall lie, the courts are not engaged in a disciplinary proceeding to punish parents for their weaknesses as individuals nor to reward the unoffending parent for any wrongs suffered by the sins of other. (*Ashwell* v. *Ashwell*, 135 Cal.App.2d 211, 217 [286 P.2d 983].) It is true that . . . the fitness of a parent to have custody of the children refers to his or her fitness at the time. (*Prouty* v. *Prouty, supra.*) Prior misconduct must have a direct bearing on the issue of present fitness and may be considered in connection with it." (*Santens* v. *Santens,* 180 Cal.App.2d 809, at pp. 818-819 [4 Cal.Rptr. 635].)

Appellant, in stressing the shortcomings of his former wife, has apparently lost sight of his own weaknesses as a father. The conduct of Mr. Bialac in secretly removing his children from their mother, the financial uncertainties of his future, the evidence of his questionable psychological fitness to provide the proper environment, and the psychologically adverse effects of his custody on his son, are all matters which the trial court undoubtedly considered.

 We are satisfied the court exercised a sound discretion in awarding custody of the children to Mrs. Bialac.

 Appellant also contends that it was prejudicial error for the court to exclude from evidence a transcript of telephone conversations between Mrs. Bialac and a man with whom she was involved, which were intercepted by appellant. The transcript contained admissions of sexual misconduct by Mrs. Bialac and some references to her attitude towards her children and her parents.

Assuming, without deciding, that the evidence was erroneously excluded, we have concluded that the error was not prejudicial. (Cal. Const., art. VI, § 4½.) The evidence was for the most part merely cumulative, revealing in detail acts of illicit sexual behavior which Mrs. Bialac had already admitted. In addition, insofar as it demonstrated an unhealthy attitude on the part of the mother, it referred to a period of time long before the child custody award, when she was undergoing considerable stress caused in no small part by the appellant himself.

The exclusion of the disputed evidence does not require reversal.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied April 15, 1966, and appellant's petition for a hearing by the Supreme Court was denied May 18, 1966. Mosk, J., did not participate therein.